In the Matter of the Application of FRANKLIN J. BISCHOFF and Others to Vacate and Set Aside Proceedings de Lunatico Inquirendo against FRANKLIN J. BISCHOFF, an Alleged Incompetent.

FRANKLIN J. BISCHOFF and Others, Appellants ; HENRY BISCHOFF, JR., Committee of the Person and Estate of FRANKLIN J. BISCHOFF, an Alleged Incompetent, Respondent.

*Lunacy proceedings — the petition must be presented in the judicial district of the alleged incompetent's residence — the facts relating to incompetency must be positively stated — the oath must be taken by the commissioners — the consent of the incompetent's wife is immaterial.*

The fact that a petition for the appointment of a committee of an alleged incompetent is not presented in the judicial district in which the alleged incompetent resides, as required by section 2323 of the Code of Civil Procedure, is an irregularity which renders the proceedings invalid.

*Semble,* that under section 2325 of the Code of Civil Procedure such a petition is defective if the matters alleged therein, relating to the mental condition of the alleged incompetent, are averred upon information and belief without any statement as to the source of the information on which the belief is predicated.

The commissioners appointed in a lunacy proceeding cannot exercise any of the functions of their office without taking the prescribed oath, and, where it appears that without taking such oath the three persons designated as commissioners issued a precept to the sheriff to summon the jury, and that thereafter two of such persons took the prescribed oath, but that the third commissioner never took any oath at all and did not thereafter act with the commissioners, the commission has no lawful existence and the verdict of the

jury is void for want of jurisdiction; such want of jurisdiction may be asserted directly or collaterally.

The fact that the lunacy proceedings were instituted with the consent and approval of the wife of the alleged incompetent does not render irregularities therein unavailable to the incompetent.

APPEAL by the petitioners, Franklin J. Bischoff and others, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 19th day of November, 1902, denying their motion to vacate and set aside proceedings *de lunatico inquirendo*.

*G. G. Reynolds* and *E. M. Wight* [*Thomas J. Keigharn* with them on the brief], for the appellants.

*Henry W. Bookstaver* [*John A. Straley* with him on the brief], for the respondent.

WOODWARD, J.:

The question presented here is whether the proceedings leading up to the order of the Special Term, dated February 8, 1898, confirming the verdict of a jury convened to try the question of the mental condition of Franklin J. Bischoff, were so far irregular or void as to justify the Special Term in vacating and setting aside the order; and, while many of the questions might better have been raised by an appeal from the original order, we are of the opinion that, as the matter involves the personal liberty of a citizen of this State, it is proper that it should be given consideration, and that such disposition should be made of the controversy as the facts warrant. The rule is well established that courts have always control of their own proceedings, and, where there is not express prohibition, may deal with them so that what is right and just may be reached. (*Matter of City of Buffalo*, 78 N. Y. 362, 370, and authorities there cited; *Matter of Henderson*, 157 id. 423, 426, and authorities there cited; *Mingay* v. *Lackey*, 142 id. 449, 455.)

The proceedings necessary to the appointment of a committee for a lunatic are now prescribed by statute (Code Civ. Proc. § 2320 *et seq.*) and the rule is elementary that in all statutory proceedings by which the individual is to be deprived of either life, liberty or property, the power should be exercised with scrupulous regard to

the rights of the individual, and under the protection which attends. other judicial proceedings affecting person or property, modified only so far as the peculiar nature of the inquiry and the condition of the alleged lunatic may render modification necessary. The fact of lunacy must be ascertained judicially before the court can deprive the lunatic of the custody of his estate or submit his person to the. control of a committee. (*Matter of Blewitt*, 131 N. Y. 541, 546; *Schneider* v. *City of Rochester*, 160 id. 165, 172, and authorities there cited.) If it appears from the record, therefore, that there are irregularities, going to the substantial rights of the alleged lunatic,. it is the duty of this court, under its inherent powers, to relieve him from the custody of his committee, and restore him to the control of his property. Section 2323 of the Code of Civil Procedure provides that proceedings of this character shall be made by petition and within the judicial district of which the alleged incompetent is. a resident, and it was held in *Matter of Porter* (34 App. Div. 147). that a failure to institute the proceedings within such judicial district was an irregularity justifying a reversal of an order confirming the réport of a referee and appointing a committee, and transferring the proceeding to the judicial district of which the alleged incompetent was a resident. The petition in the matter now before us, was presented to the court in the first judicial district, while it is. conceded that the alleged incompetent was a resident of City Island in the second judicial district (*McTurck* v. *Foussadier*, 51 App. Div. 218), and if this objection had been raised upon an appeal from the original order appointing the committee, it is not to be doubted that it would have resulted in a reversal.

Section 2325 of the Code of Civil Procedure further provides that the petition shall be in writing and verified by the affidavit of the petitioner or his attorney, to the effect that the matters of fact therein stated are true. The material allegations of the petition are. stated on information and belief, and the petition is verified in the. usual form, "that the same is true of his own knowledge except as to the matters therein stated to be alleged on information and belief and. as to those matters he believes it to be true," so that all of the allega-tions of the petition in so far as the mental condition of the alleged incompetent person is concerned, rest upon no better foundation than the belief of the petitioner in the matters alleged on information

and belief, without any statement as to the source of this information on which the belief is predicated. In *Matter of Peck* v. *Cargill* (167 N. Y. 391, 393) the court say of a petition for the revocation of a liquor tax certificate: "The least that should be required in such a case is that the petition should state the facts positively upon oath, unless the statute expressly permits a statement upon information and belief, and this statute does not." While it may be that the accompanying affidavits supply this defect in some measure the papers are not as complete as should be required in proceedings of this character where fundamental rights are involved, and while this, standing alone, might not justify the interposition of this court, it is one of the matters which may fairly be considered in reviewing the proceeding as a whole, and may aid us in reaching a right conclusion.

Section 2327 of the Code of Civil Procedure provides that "if it presumptively appears to the satisfaction of the court from the petition and the proofs accompanying it that the case is one of those specified in this title; and that a committee ought, in the exercise of a sound discretion, to be appointed, the court must make an order directing * * * that a commission issue, as prescribed in the next section, to one or more fit persons designated in the order;" and it appears that the court taking original jurisdiction acted under this provision and did make an order appointing three persons as commissioners to inquire into the facts alleged in the petition. The next section (2328) provides that the "commission must direct the commissioners to cause the sheriff of a county specified therein to procure a jury; and that they inquire, by the jury, into the matters set forth in the petition; and also into the value of the real and personal property of the person alleged to be incompetent, and the amount of his income. It may contain such other directions, with respect to the subjects of inquiry, or the manner of executing the commission, as the court directs to be inserted therein."

Section 2329 of the Code of Civil Procedure provides that each commissioner, "before entering upon the execution of his duties, must subscribe and take, before one of the officers specified in section 842 of this act, and file with the clerk, an oath, faithfully, honestly and impartially to discharge the trust committed to him." If a commissioner becomes incompetent, or neglects or refuses to

serve, or removes from the State, the court may remove him, and the court is likewise authorized, from time to time, to fill any vacancy caused by death, removal or resignation, showing a purpose on the part of the Legislature to keep the commission, of whatever number originally composed, full. This purpose becomes the more manifest by the provisions of section 2331 of the Code of Civil Procedure, which provides that "all the commissioners must attend and preside at the hearing; and they, or a majority of them, have, with respect to the proceedings upon the hearing, all the power and authority of a judge of the court, holding a trial term, subject to the directions contained in the commission." The commissioners, whose duty it was to "immediately issue a precept to the sheriff, designated in the commission, requiring him to notify, not less than twelve nor more than twenty-four indifferent persons, qualified to serve" (Code Civ. Proc. § 2330) and to attend and preside at the hearing, for the purpose of determining the question of the competency of the alleged incompetent, were not authorized to act until they had taken the oath prescribed by law; their appointment could only be consummated, and they fully inducted into office, by that ceremony. It was a condition precedent to their right to perform the functions of their office, and the oath was one of the safeguards provided by statute for the protection of the rights of the individual, and the Legislature, by prescribing the form, made the form of the essence of the act. That which the Legislature has directed, courts cannot declare immaterial. (*Merritt* v. *Village of Portchester*, 71 N. Y. 309, 312; *Stebbins* v. *Kay*, 123 id. 31, 35.) Yet it appears from the record that the three persons designated as commissioners, without taking any oath of office whatever, and on the 14th day of December, 1897, issued a precept to the sheriff to summon the jury in the inquiry. The oath which was taken by Wilbur McBride and Robert H. Wylie, two of the commissioners, bears date of December 21, 1897, while it is conceded that Hugh H. Moore, who joined in the precept to the sheriff, under date of December fourteenth, never took any oath at all, and did not thereafter act with the commissioners. The statute prescribed the form of the oath; the commissioners were required to swear that they would faithfully, honestly and impartially discharge the trust committed to them, while the oath taken by the only two who ever took an oath provided that they

would "faithfully, honestly and impartially discharge the duty of commissioner," which, while not in exact conformity, may be deemed a substantial compliance, although the rule recognized in *Merritt* v. *Village of Portchester* (*supra*) leaves the question debatable. Here, then, was a jurisdictional defect in the tribunal created by the statute for determining the question of the competency of the alleged incompetent. The commission was not consummated when the precept was issued to the sheriff, and the commission, as a whole, was never brought into being, because the power was vested, not in a majority of the commission, but in the commission as composed by the order of the court. For while it is true that a majority of such a commission may act when all of them are present, or when all of them have been notified of the meeting and two of them attend (*Matter of Baker*, 173 N. Y. 249, 254), the duties of a commission composed of three persons cannot be discharged by two of them where the third has never qualified and has taken no part in the proceedings, and this is especially true where the statute provides that "all the commissioners must attend and preside at the hearing," when they, or a majority of them, have all of the powers of a judge of the court holding a trial term, etc. (Code Civ. Proc. § 2331.) It has been held that all of the trustees must unite in the disposal of trust property, and that a deed by two, while a third is living, is not valid. The trustees take as joint tenants, and must all unite in the execution of the trust. (*Brennan* v. *Willson*, 71 N. Y. 502, 507, and authorities there cited.) No reason suggests itself why a different rule should prevail in a matter involving the liberty and property of an alleged incompetent, especially in view of the provisions of the statute cited above. No court or judicial officer can acquire jurisdiction by the mere assertion of it, or by erroneously alleging the existence of facts upon which jurisdiction depends. If the court had no jurisdiction, it had no power to make a record, and the supposed record is not in truth entitled to the character of a judgment. (*O'Donoghue* v. *Boies*, 159 N. Y. 87, 98.) As there was never a lawful commission, with power to issue a precept to the sheriff, or to preside at the hearing, the verdict of the jury was void for want of jurisdiction, and want of jurisdiction to render the particular judgment may always be asserted and raised directly or collaterally, either from an inspection of the record itself when offered in behalf

of the party claiming under it, or upon extraneous proof, which is always admissible for that purpose. (*O'Donoghue* v. *Boies, supra,* 99.) If we are right in this view of the case, it is evident that there was no verdict which the court could confirm, and there could, therefore, have been no adjudication that the alleged incompetent was insane, or so far incompetent as to render him liable to the restrictions upon his liberty necessarily involved in the appointment of a committee of his person and property.

Various other matters are alleged against the regularity of the proceedings, but it does not appear to be necessary to consider them. The proceedings to which we have already called attention are sufficient to justify a reversal of the order appealed from, and they are not the less available to the alleged incompetent because it is asserted that they were instituted with the consent and approval of his wife. The incompetent himself could not give the court jurisdiction to deprive him of his liberty (*Matter of Langslow,* 167 N. Y. 314, 321), and this power was certainly not invested in his wife and family. He had a right to a trial in the manner provided by law of the question of his sanity, and not having had such a trial, he is entitled to his liberty. The court which confirmed the verdict of the jury did not attempt to determine the question of the sanity of the alleged incompetent; it merely confirmed the verdict, and as there could have been no lawful verdict from a jury summoned and appearing before a partially constituted commission, the order of confirmation could not give it validity, and it was proper that the relief asked for in the motion now under review should have been granted.

The order appealed from should be reversed and the motion granted, with costs.

GOODRICH, P. J., JENKS and HOOKER, JJ., concurred; HIRSCH-BERG, J., concurred in result.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.